**SOUTHERN AIR TRANSPORT, INC., Plaintiff,**

v.

**AMERICAN BROADCASTING COMPANIES, INC. and Karen Burnes, Defendants.**

**Civ. A. No. 87–0634–OG.**

United States District Court, District of Columbia.

July 30, 1987.

---

Robert M. Beckman, David M. Kirstein, and Pierre Murphy, Washington, D.C., for plaintiff.

Max O. Truitt, John Payton, and Ann D. Behlen, Washington, D.C., for defendants.

## MEMORANDUM

GASCH, District Judge.

## I. INTRODUCTION

On February 25 and 26, 1987, the American Broadcasting Company ("ABC") broadcast an investigative news report describing the efforts of the United States Government to enlist the assistance of the government of South Africa to aid the Nicaraguan Contras by supplying aircraft and flight crews.[1] The story was entitled the "South Africa Connection." In an attempt to flesh out the alleged connection, Karen Burnes, an investigative reporter for ABC, highlighted the participation of Southern Air Transport ("Southern Air") in the venture. Plaintiff Southern Air now brings suit against defendants ABC and Karen Burnes for libel and for being placed before the public in a false light. The defendants have submitted motions to the Court either to dismiss the plaintiff's complaint or, in the alternative, for summary judgment. The plaintiff has cross-motioned for leave to conduct discovery and for sanctions against the defendants. For reasons provided hereafter, the Court will grant the defendants' motion to dismiss plaintiff's false light claims and will deny all the remaining motions.

## II. FACTS

To determine the viability of the plaintiff's claims, it is essential to understand

---

**1.** The reports were broadcast respectively on "World News Tonight" and on "Good Morning America."

the substance of the alleged libel. An examination of the relevant segment of "World News Tonight," aired on February 25, 1987, is illustrative. The portion of the program under attack is short and to the point; it ran only three minutes and forty-three seconds. The newscast began with an introduction by anchorman Peter Jennings. Jennings' first words were of the "Iran affair" and the fact that there was an "unusual sense of anticipation about the Reagan presidency" because the Tower Commission Report was due to be published the following day. Jennings stated,

> We are going to begin this evening with the results of an ABC News investigation into what lengths the Reagan Administration has gone to in order to help the Nicaraguan Contras when Congress was against it. This is a story of how the South African government was enlisted to help the Contras with aircraft and flight crews.

During this introduction, the graphic broadcast was of drilling armed soldiers wearing camouflage uniforms above the words "South Africa Connection."

After this introduction, Karen Burnes proceeded to tell the promised story. Burnes first noted that "for over three years United States government officials and the South African government have been working together to provide military assistance to the Contras." The operation was said to be run by CIA Director William Casey "outside of all normal channels." During this portion of the broadcast, the television screen was split into three portions: the top portion of the screen showed the word "INVESTIGATION," the bottom left portion of the screen contained the words "South Africa Connection," and the lower right portion of the screen contained the words "The Contras." As Burnes spoke, the image on the screen dissolved into a film of marching troops carrying automatic weapons.

Burnes next described that the CIA's then Latin American Division Chief, Duane

Clarridge, had secretly traveled to South Africa in 1983 in an attempt to solicit aid for the Contras. Burnes stated that,

> Several months later [after Clarridge's trip to South Africa] Safair Freighter, a South African cargo company, opened an office in the United States. U.S. officials said Safair is involved in covert operations for the South African government. On the same day it incorporated Safair signed a lease with Southern Air Transport, known for its past relationship with the Central Intelligence Agency. Safair provided planes to Southern Air, planes which were used to fly weapons to the Contras.

The graphic during this sequence showed an airplane bearing the name SAFAIR dissolving into a film showing an airplane bearing the name Southern Air Transport.

Before the conclusion of the story, Southern Air Transport was mentioned yet again. Burnes stated that in 1984 CIA Director Casey met with officials of Saudi Arabia to discuss covert aid for the Contras in Nicaragua. Moreover, in 1986, Casey was said to have personally visited South Africa to solicit aid. Burnes explained that

> one month later after Casey's visit to South Africa, retired Air Force General Richard Secord, his deputy Richard Gadd and a man described by others present as Lieutenant Colonel Oliver North met with Southern Air Transport pilots in a safe house in San Salvador. There they were told that third country nationals would fly weapons into Nicaragua. American officials say that some of these nationals were South African.

The graphics associated with this segment were pictures of Secord, Gadd, and North and a film of an unidentified air strip, purportedly associated with the safe house in San Salvador.[2]

## III. DEFENDANTS' MOTION [3]

### A. *Motions to Dismiss*

It is axiomatic that the defendants' motion to dismiss, pursuant to Federal Rule of

---

2. It is noteworthy that no other network ran this story.

3. This suit is in federal court on the basis of diversity jurisdiction. 28 U.S.C. § 1332(a). The applicable law is that of the District of Colum-

Civil Procedure 12(b)(6), is subject to rigorous examination. As the Supreme Court stated in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957),

> [i]n appraising the sufficiency of the complaint, we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Id.* at 45–46, 78 S.Ct. at 101–02. It is with reference to this standard that all the defendants' motions to dismiss must be evaluated.

█ The defendants first claim that dismissal is proper because Southern Air's complaint does not adequately plead libel of a corporation. It is true that corporations have "no reputation in any personal sense." W.P. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser & Keeton on Torts* § 111 at 779 (5th ed. 1984). As such, a corporation cannot be defamed by words, like unchastity, that would affect its purely personal repute. *Id.* Nonetheless, defamation suits brought by corporations will lie when "the corporation is one for profit, and the matter tends to prejudice it in the conduct of its business or to deter others from dealing with it." Restatement (Second) of Torts § 561(a) (1977).

█ In the case at bar, the complaint properly alleges that Southern Air Transport has sustained economic harm as a consequence of the defendants' broadcasts. The complaint states that the plaintiff has been "prejudiced in the conduct of its business," Complaint at ¶ 19, has been deprived of its "good commercial reputation" and has been brought into contempt before its "customers, lenders, creditors and the general public." Complaint at ¶¶ 14, 19. On the basis of these allegations, the Court finds that the plaintiff has properly pled libel of a corporation.

The defendants next argue that the challenged broadcast is not capable of bearing a defamatory meaning and therefore must be dismissed. Without doubt this may be a valid defense to a charge of libel. *See Tavoulareas v. Piro*, 817 F.2d 762, 779 (D.C.Cir.1987). Moreover, the decision is one for the Court. *Id.* Nonetheless,

> [u]nder District of Columbia defamation law, a court's power to hold as a matter of law that a statement is not defamatory is very limited. 'It is only when the Court can say that the publication is not reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory sense that it can rule as a matter of law, that it was not libelous.' First amendment considerations, insofar as they might create a presumption in favor of dismissal, do not affect this determination at the pleading stage.

*McBride v. Merrell Dow Pharmaceuticals, Inc.*, 717 F.2d 1460, 1465 (D.C.Cir.1983) (citations omitted).

When determining whether a broadcast is capable of bearing a defamatory meaning, several other principles provide useful guidance. First, a statement generally is considered defamatory "if it tends to injure plaintiff in his trade, profession or community standing, or lower him in the estimation of the community." *See Afro-American Publishing Co. v. Jaffe*, 366 F.2d 649, 654 (D.C.Cir.1966) (en banc). In considering whether a statement is defamatory, a court should first consider the words themselves. *Tavoulareas, supra*, 817 F.2d at 779. In addition, however, the court should also consider the broadcast "as a whole, in the sense in which it would be understood by the [listeners] to whom it was addressed." *Jaffe, supra*, 366 F.2d at 655. Moreover,

> [i]n studying a television program for possible defamatory meanings, a court must not confine its analysis to the words alone. The court must also consider the impact of the video portion of the program since the television medium offers the publisher the opportunity, through visual presentation, to emphasize certain segments in ways that can-

bia since that is the place where the plaintiff claimed to have suffered injury at the hands of the defendants. *See Dawd v. Calabrese*, 589 F.Supp. 1206, 1210–11 (D.D.C.1984).

not be ascertained from a mere reading of the transcript. It is the entirety of the program, both audio and video, that must be considered in determining whether a television program is reasonably susceptible of a defamatory meaning.

*Lasky v. ABC*, 631 F.Supp. 962, 13 Media L.Rep. (BNA) 1379, 1385 (S.D.N.Y.1986). Based on the foregoing evaluation, "it [will] suffice[] to establish defamation [if] the publication tends to lower plaintiff in the estimation of a substantial, respectable group, though they are a minority of the total community of plaintiff's associates." *Jaffe, supra*, 366 F.2d at 654 n. 10.

The defendants claim that their broadcasts are not capable of plaintiff's interpretation that,

[t]he report and pictures broadcast with the report created the false and defamatory impression on the general viewer that Southern Air leased airplanes from SAFAIR as an active and knowing participant in an illegal scheme established by the governments of South Africa and the United States for South Africa to assist in the delivery of weapons to the Contras.

Complaint at ¶ 8. In support, the defendants attempt to catalog for the Court what the challenged broadcast says and what it does not say. *See* Defendants' Motion to Dismiss or for Summary Judgment at 18.

Despite the defendants' characterizations, the Court cannot say that it is "beyond doubt" that the challenged broadcast could not be construed by the viewing public in the District of Columbia as containing a defamatory message. The Court has reviewed both the transcripts of ABC's broadcasts and the programs themselves. Based on this review, the Court is not satisfied that the juxtaposition of graphics and commentary could not convey the meaning ascribed to the broadcast by the plaintiff. Accordingly, the Court rejects the defendants' second argument for dismissal.

■ The final argument raised by defendants' motion to dismiss is that Southern Air Transport's allegation that it was placed in a false light fails to state a claim upon which relief can be granted. To be actionable in the District of Columbia, a plaintiff must satisfy the requirements of a false light claim as defined by the Restatement (Second) of Torts. *See Vassiliades v. Garfinckel's, Brooks Bros.*, 492 A.2d 580, 587 (D.C.1985). Thus, in the District, publicity that places someone in a false light in the public eye is a tort of invasion of privacy. *Id.* Pursuant to the Restatement,

[o]ne who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts § 652E (1977).

The defendants contend that Southern Air Transport cannot bring suit for being placed in a false light because a corporation has no right of privacy. Pursuant to the Restatement, a requirement of a false light claim is that a publication is "highly offensive to a reasonable person." *Id.* Unlike actions for defamation, it is "not the tendency to lower the person in the esteem of others, but the tendency to be highly offensive, that forms the gravamen of the false light tort." Smolla, *Law of Defamation* § 10.02[2][c]. A corporation cannot be offended. Thus, the Restatement recognizes that a corporation cannot bring suit for being placed in a false light. *See* Restatement (Second) of Torts § 652I (1977) (comment c). Since the District of Columbia follows the Restatement's formulation of the right of privacy and that source prohibits corporations from bringing suit for false light claims, the Court concludes that the plaintiff has not stated a false light claim upon which relief can be granted. Accordingly, the plaintiff's false light claims, Counts Three and Four, are dismissed.

B. *Motion for Summary Judgment*

 The defendants base their motion for summary judgment upon the doctrine of substantial truth. According to the defendants, this defense is closely related to the claim that a statement is not capable of defamatory meaning:

> [t]he two defenses often dovetail, because the same basic policies that undergird the rule that minor inaccuracies going to the gist or sting of the defamation do not subtract from the 'substantial truth' defense also underlie the distinction between defamatory and nondefamatory speech. Plaintiffs sometimes sue when the underlying sting of what was said about them is true but surrounding details are false. Inaccuracies concerning those details, however, may have absolutely no tendency to injure reputation, and therefore are not defamatory. The test for 'substantial truth' that looks to whether the reader would think differently of the plaintiff if the literal truth had been communicated is essentially parallel to the test for measuring whether the speech was defamatory in the first place. Perhaps the classic example was the allegation in *New York Times v. Sullivan* that black students protesting in Montgomery, Alabama, had been singing not 'my country, tis of thee' but the 'Star Spangled Banner' when police arrived. Any time the factual error leads the reasonable recipient of the information to react, 'So what?' the error of detail is probably not defamatory. When all errors of detail are of this nature, the defendant actually has two defenses— that the 'gist or sting' is substantially true, and that whatever falsehoods do exist are not defamatory.

Smolia, *Law of Defamation* § 5.11[3] (1986) (footnotes omitted). The defendants have located limited support for the substantial truth doctrine in this circuit. *See Tavoulareas v. Piro, supra,* 817 F.2d at 788. Without doubt the rule has been adopted in other jurisdictions. *See Guccione v. Hustler Magazine, Inc.,* 800 F.2d 298 (2d Cir.1986), *cert. denied,* ── U.S. ──, 107 S.Ct. 1303, 94 L.Ed.2d 158 (1987);

*Gomba v. McLaughlin,* 180 Colo. 232, 504 P.2d 337, 338 (1972) (en banc).

The defendants claim that applications of this principle to the "undisputed" facts is a straightforward matter. The defendants contend that it is beyond question that Southern Air leased planes from SAFAIR and that Southern Air planes were used to fly weapons to the Contras. The defendants proceed on the assumption that Southern Air denies only one fact: that SAFAIR planes were used to fly weapons to the Contras. *See* Complaint at ¶ 9. The defendants maintain that even if their publication of this fact was incorrect, the broadcast remains substantially true. The defendants reason that Southern Air Transport's commercial reputation may be damaged by the fact that they contract with a South African corporation or may be damaged by the fact that they supplied weapons to the Contras. The defendants contend that the harm worked upon Southern Air cannot, as a matter of law, be related to whether the airplane which flew arms to the Contras bore the insignia Southern Air Transport or SAFAIR airlines. Defendants maintain that the difference is insubstantial.

The Court cannot agree. The Supreme Court has recently stated that courts should act with "caution" before granting a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). This circuit has likewise noted that summary judgment is a "drastic remedy" which should not be permitted to deprive a litigant of his or her day in court and the opportunity to prove a disputed material factual issue. *See Greenberg v. Food and Drug Admin.,* 803 F.2d 1213, 1216 (D.C. Cir.1986). Thus, the Supreme Court has noted that trial courts may properly deny a motion for summary judgment "where there is reason to believe that the better course would be to proceed to a full trial." *Anderson, supra,* 106 S.Ct. at 2514. The Court believes this is such a case.

The Court's conclusion is founded on several observations. It is the defendants' position that the only material fact in dis-

pute is whether SAFAIR planes or Southern Air planes were used to fly weapons to the Contras. The defendants see no difference between the two. The Court, however, reaches the opposite conclusion when the inferences drawn from the underlying facts are viewed in a light most favorable to Southern Air. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). If a SAFAIR plane was deliberately employed to supply weapons to the Contras, then a reasonable inference is that Southern Air played a role in deploying the South African plane. While it is true that Southern Air Transport dealt commercially with a South African corporation, the Court finds that there is a substantial difference between economic dealings and innuendo that the plaintiff was in partnership with the government of South Africa. The Court is unwilling to hold, as a matter of law, that such an inference is unreasonable or could not lead to a finding of defamatory meaning. In addition, there is more than one material fact in dispute. It is the plaintiff's contention that SAFAIR opened an office in the United States in 1975, not in 1983 as ABC's newscast related. If true, the link emphasized in the defendants' broadcast between Duane Clarridge's secret trip to South Africa and the establishment of SAFAIR in the United States would be much weakened. Likewise, Southern Air claims that its agreement to lease planes from SAFAIR was consummated in 1982, before Duane Clarridge's secret trip to South Africa. Finally, plaintiff contends that the broadcast, in context, implies that Southern Air was involved in an illegal operation. The Court cannot say, as a matter of law, that a jury would not so find. Consequently, the defendants' motion for summary judgment is denied.[4]

## IV. PLAINTIFF'S MOTIONS

### A. *Motion for Sanctions*

The plaintiff contends that the defendants' motions for dismissal and summary

judgment were interposed for an improper purpose—to harass, cause unnecessary delay and to increase the cost of litigation—and accordingly justifies sanctions. *See* Fed.R.Civ.P. 11. The principal gravamen of plaintiff's motion appears to be that the defendants moved for summary judgment on the question of substantial truth after representing to the Court in a motion for a stay of discovery that they did not "then anticipate" so moving. The Court disagrees with the plaintiff's characterization of the defendants' representations. The Court holds that the defendants delivered what was promised: a good faith effort to dispose of this case on a threshold issue. The Court finds that, despite its failure there was a legal basis for the motion. *See* Fed.R.Civ.P. 11. Accordingly, the Court will deny the plaintiff's motion for sanctions.

### B. *Defendants' Motion for Discovery*

Because the Court has denied the defendants' motions to dismiss or to have summary judgment on the plaintiff's libel claims, this case will move forward toward trial. The stay of discovery ordered on May 6, 1987, will no longer be in effect. Thus, discovery may recommence upon the filing of this memorandum.

## V. CONCLUSION

In sum, the Court grants the defendants' motion to dismiss the plaintiff's false light claims. The Court refuses, however, to either dismiss or grant summary judgment upon the plaintiff's libel claims. Discovery on these claims should recommence immediately in order that this case may be tried promptly. Finally, the Court denies the plaintiff's motion for sanctions against the defendants.

### ORDER

Upon consideration of the defendants' motion to dismiss, or, in the alternative, for summary judgment, plaintiff's motions for sanctions and leave to conduct discovery,

---

**4.** The Court is similarly unwilling to rule at the present time that ABC's broadcast was protected opinion.

oppositions thereto, oral argument, and the entire record herein, and for the reasons stated in the accompanying memorandum, it is by the Court this 30th day of July, 1987,

ORDERED that the defendants' motion to dismiss the plaintiff's false light claims, counts three and four, be, and hereby is, granted; and it is further

ORDERED that defendants' remaining motions be, and hereby are, denied; and it is further

ORDERED that plaintiff's motion for sanctions be, and hereby is, denied; and it is further

ORDERED that plaintiff's motion for leave to conduct discovery be, and hereby is, granted.