## SOUTHERN AIR TRANSPORT, INC. Plaintiff,

### v.

## AMERICAN BROADCASTING COMPANIES, INC. and Karen Burnes, Defendants.

### Civ. A. No. 87–0634–OG.

United States District Court, District of Columbia.

Feb. 1, 1988.

Robert M. Beckman, David M. Kirstein and Pierre Murphy, Washington, D.C., for plaintiff.

Max O. Truitt, Jr., John Payton, Stephen W. Preston, Washington, D.C., for defendants.

## MEMORANDUM

GASCH, District Judge.

### INTRODUCTION

This matter is before the Court upon defendants' motion for reconsideration and renewed motion for summary judgment. Since the denial of summary judgment on

---

July 30, 1987, 670 F.Supp. 38, it has come to light that a SAFAIR plane—leased by Southern Air Transport Co. and with plaintiff's president on board—flew weapons from the Contra supply depot at Ilopango, El Salvador, to the Contra supply depot at Aguacate, Honduras, on February 20, 1986. According to defendants, the revelation of this fact cuts the heart out of plaintiff's libel case. Plaintiff contends that the revelation is irrelevant to the innuendo that it was in cahoots with the "reviled" South African government and performing illegal operations on behalf of the Central Intelligence Agency ("CIA"). Southern Air Transport, Inc., now states that it has never contested that it assisted the Contras, that it leased planes from SAFAIR or that it delivered weapons to the Contras.[1] It does dispute the implication that it "deliberately employed SAFAIR planes to supply weapons to the Contras pursuant to an agreement between the U.S. and South Africa for South Africa to assist the Contras." Plaintiff's Memorandum of November 9, 1987, at 9.

This libel suit was filed on March 9, 1987, in response to broadcasts by the American Broadcasting Company ("ABC") on February 25 and 26, 1987. ABC broadcast on its evening and morning news programs an investigative news report describing the efforts of the United States government to enlist the assistance of the government of South Africa to aid the Nicaraguan Contras by supplying aircraft and flight crews. The story was entitled the "South Africa Connection." An investigative reporter for ABC, Karen Burnes, a codefendant in this case, reported that Southern Air Transport Co. leased aircraft from SAFAIR Freighter, a South African company alleged to be involved in covert operations on behalf of the South African government. More detailed facts of this case are set forth in the Court's July 30, 1987, memorandum. Plaintiff sued for libel and for being placed before the public in a false light. The false light claims were dismissed by the Court on July 30, 1987.

At the same time, the Court denied defendants' motion for summary judgment. The defendants had based that motion on the doctrine of substantial truth, but cited limited support for the doctrine in the District of Columbia Circuit. It was the defendants' position that the only material fact in dispute was whether SAFAIR planes or Southern Air planes were used to fly weapons to the Contras. By viewing the inferences drawn from the underlying facts in the light most favorable to Southern Air, the Court noted that there was a substantial difference between economic dealings between Southern Air Transport and a South African corporation and the innuendo that plaintiff was in partnership with the government of South Africa. The Court concluded, "The Court is unwilling to hold, as a matter of law, that such an inference is unreasonable or could not lead to a finding of defamatory meaning."

Additionally, the Court found more than one material fact in dispute. The first disputed fact surrounds plaintiff's contention that SAFAIR opened an office in the United States in 1975, as opposed to 1983, as the ABC broadcast had related. If plaintiff were correct, that fact would weaken the link that defendants' broadcast emphasized between a CIA official's secret trip to South Africa and the establishment of SAFAIR in the United States. Another disputed fact previously noted by the Court is the plaintiff's claim that its agreement to lease planes from SAFAIR was consummated in 1982, prior to that secret trip to South Africa. Additionally, because the Court could not say, as a matter of law, that a jury would not find that the broadcast implied Southern Air was involved with an illegal operation, summary judgment was not granted.

## DISCUSSION

Before the Court are defendants' motion for reconsideration or to amend and a sup-

---

1. In response to this assertion, defendants quote from the transcript of the July 24, 1987, hearing at which plaintiff's counsel stated: "I heard Mr. Payton say, and I wrote it down because I couldn't believe my ears, and unfortunately he said it several times, 'It is undisputed that Southern Air delivered weapons to the Contras.' This is not true." Defendants' Reply Memorandum at 2 n. 1.

plement to defendants' motion for reconsideration and renewed motion for summary judgment, as well as plaintiff's oppositions thereto. The original motion for reconsideration was grounded on the argument that the Court misplaced its reliance upon the Restatement of Torts in defining defamation of a corporation. On October 9, 1987, by letter, defendants' counsel requested the Court to defer its ruling upon defendants' motion for reconsideration or to amend pending submission by defendants of a supplementary memorandum in support of that motion. On October 26, 1987, defendants filed their supplementary memorandum. Because the strongest arguments for reconsideration are made in defendants' November supplemental memorandum, the Court will not address those arguments propounded by defendants in their original submission.

The basis of defendants' supplemental memorandum was the admission by Southern Air that at least one plane that was leased from SAFAIR was used to fly weapons to the Contras.. On February 20, 1986, an aircraft leased by plaintiff from SAFAIR delivered weapons to the Contras at a Honduras air station. The weapons were moved from Ilopango, El Salvador, to Aguacate, Honduras. Because Southern Air can no longer allege that "the false and defamatory statement that Southern Air used SAFAIR planes to fly weapons to the Contras was known by Burnes and ABC to be false prior to the time of the broadcast," Complaint at ¶¶ 9, 13, defendants have renewed their motion for summary judgment. Not only have defendants renewed their motion, but they have moved for sanctions under Rule 11. The defendants base their Rule 11 motion on grounds that Southern Air filed this action claiming that a statement about its own operations was false when it knew or should have known it was true.

The thrust of the complaint in this case is that ABC and Karen Burnes published statements known to be false concerning Southern Air and news reports on February 25 and 26, 1987. Plaintiffs previously claimed that the statement that SAFAIR planes were used by Southern Air to fly weapons to the Contras was central to defendants' reports and was known by defendants to be a lie at the time of the reports. Although the Court, in July, rejected defendants' argument that the reports were incapable of defamatory meaning, the Court concluded that there is a substantial difference between "whether SAFAIR planes or Southern Air planes were used to fly weapons to the Contras," stating that if a SAFAIR plane was deliberately employed to supply weapons to the Contras, then a reasonable inference is that Southern Air played a role in deploying the South African plane. The possibility of a false innuendo that the plaintiff was in partnership with the government of South Africa arises only if the statement as to the use of SAFAIR planes is false.

Defendants contend that every statement remotely capable of defaming Southern Air is true. It is undisputed that Safair Freights (USA), Inc., SAFAIR's American subsidiary, was incorporated in New Jersey on August 12, 1983. Similarly, it is undisputed that on August 12, 1983, Southern Air leased two Hercules L–100 aircraft from SAFAIR. With the most recent revelation, it is undisputed that a SAFAIR plane was used by Southern Air to fly weapons to the Contras.

Defendants also assert that the defamatory implication urged by Southern Air cannot fairly be read into the reports and, in any event, is not actionable. Southern Air claims that the reports on ABC News create the impression that Southern Air knowingly and actively participated in a scheme between the United States and the South Africa government. But as defendants assert, there is no language in the reports suggesting intent, willfulness or knowledge on Southern Air's part.

Plaintiff opposes the renewed motion for summary judgment and motion for reconsideration, stating that the disclosure that an aircraft leased from SAFAIR was used to move munitions from El Salvador to Honduras on February 20, 1986, is irrelevant to the story at issue. Plaintiff decries the inference that Southern Air leased planes from SAFAIR to carry out a scheme

generated by the CIA for the government of South Africa to aid the Contras. According to plaintiff, whether or not a SAFAIR plane was used by Southern Air to deliver weapons to the Contras is immaterial because the story created the false impression that Southern Air leased South African airplanes pursuant to a scheme between the United States and the government of South Africa. Plaintiff states that the same material facts are in dispute as were in dispute in July of 1987 when the Court denied the motion for summary judgment. According to plaintiff, defendants fail to address the innuendo conveyed by the broadcast considered as a whole. In dispute, according to Southern Air, is whether it *deliberately* employed SAFAIR planes to deliver weapons to the Contras pursuant to an agreement between the United States and South African governments for South Africa to assist the Contras. The Court's July 30, 1987, memorandum stated: "If a SAFAIR plane was deliberately employed to supply weapons to the Contras, then a reasonable inference is that Southern Air played a role in deploying the South African plane." Southern Air contends that it did not "deliberately" employ SAFAIR planes to supply weapons to the contras. That contention, according to plaintiff, provides a genuine issue of material fact in dispute that precludes summary judgment.

The plaintiff also states that there is no evidence of any agreement between plaintiff and the South African government to transport weapons to the Contras. That lack of evidence, according to plaintiff, raises a disputed issue of whether there was a partnership between the South African government and Southern Air through which SAFAIR planes would be used to deliver weapons to the Contras. The movement of weapons, says plaintiff, has no bearing on the disputed issue of material fact of whether the Latin American chief at the CIA travelled to South Africa to discuss aid to the Contras prior to the time Southern Air's lease arrangement with SAFAIR took effect. Finally, plaintiff states that whether Southern Air was engaged in an illegal operation as described in the broadcasts remains a disputed issue of fact. Unless the defendants can show that Southern Air deliberately used the SAFAIR plane pursuant to a U.S.–South Africa scheme for Southern Air to lease planes from SAFAIR to fly weapons to the Contras, plaintiff maintains that the newly revealed information is irrelevant to this case.

CONCLUSION

The dispute over whether SAFAIR planes were used to fly weapons was critical to the Court's determination that summary judgment could not be granted. Two additional facts that remained in dispute in July are now uncontested: (1) the date of SAFAIR's incorporation; and, (2) the date of the lease between plaintiff and SAFAIR. When faced with the undisputed fact that a SAFAIR plane was used by plaintiff, with the plaintiff's chief executive officer on board, to ferry weapons from one Contra supply depot El Salvador to another within Honduras, plaintiff's case unravels. With this revelation, there is a reasonable inference that Southern Air played a role in deploying a South African airplane to supply weapons to the Contras.

Plaintiff misplaces its reliance on the Court's use of the word "deliberately" in its statement that if a SAFAIR plane had been deliberately used to supply weapons to the Contras, then a reasonable inference is that the plaintiff played a role in deploying the South African plane. The Court will not allow plaintiff to single out the word "deliberately" in resisting summary judgment. No language in the broadcast indicated a willfulness on the part of Southern Air in deploying the SAFAIR plane. Instead, the broadcast stated SAFAIR provided planes to Southern Air, pursuant to a lease agreement entered into on the same day it incorporated in New Jersey, and that those planes "were used to fly weapons to the Contras." There is an inference that the South African planes were used deliberately by Southern Air to deliver munitions to the Contras. But the affidavit of Mr. Langton, president of Southern Air, attesting that he was on the SAFAIR plane when it delivered the weapons to the Contras,

relieves any doubt that Southern Air was aware that it had delivered weapons to the Contras. The fact that the president of Southern Air "did not think about the aircraft being a SAFAIR plane," but thought it was just another plane in plaintiff's fleet, does not preclude the conclusion that the plaintiff deliberately used a SAFAIR plane to deliver weapons to the Contras.

Upon reconsideration of this case, in light of the new facts presented to the Court, it now appears that there is a basis for the allegations in the story. Because of the truth of the statements made about Southern Air Transport in the ABC News broadcast, it is impossible to infer defamatory meaning from them. As a result, there is no need for this case to proceed to trial. Defendant's motion for reconsideration and its renewed motion for summary judgment are, therefore, granted. The Court denies the motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure.